# Thompson, Appellant, v. The Grand Gulf Railroad and Banking Company.

Under that provision of the bill of rights which declares, that "no person's property shall be taken or applied to public use without the consent of the legislature, and without a just compensation first made therefor," the compensation must precede the seizure of the property for public uses.

That provision of the charter of the Grand Gulf Railroad and Banking Company which, in case the company cannot agree with the owners of land over which said road is to pass, upon the compensation to be paid therefor, authorises the company to petition to the circuit court of Claiborne county, to summon and empannel a jury to assess the damages, and directs the court, upon valuation assessed, to convey the land to the company, and give judgment and execution against the company, and in favor of the owner of the land, for the amount of the valuation, is unconstitutional. Judgment and execution is not compensation within the meaning of the constitution.

This court has no power to render a different judgment from that directed by the legislature. The court will declare the remedy provided insufficient, but will not undertake to give one that is sufficient.

A proceeding by petition under the charter of the Grand Gulf Railroad and Banking Company, to assess the value of the land over which the road is to pass, and also assess the damages, so affects the interests of the owner as to make him a party to the proceedings.

APPEAL from the circuit court of Claiborne county.

The Grand Gulf Railroad and Banking Company filed their petition against Thompson, in the circuit court, praying for a jury to assess the damages which would be sustained by Thompson, by their railroad passing over his land, and also, to assess the land which would be taken for the purpose of making the road.

The provision of the charter of the road, under which this proceeding was had, is as follows:

" The said company, if they can agree with the owners, may purchase any land that they may deem necessary and expedient; and in case they cannot agree with the owners of the land upon the terms of purchase, or in case the owner or owners shall be

[Thompson *v.* The Grand Gulf Railroad and Banking Company.]

under any legal disability to contract, the said company, on their failure, (the owner or owners,) may petition to the circuit court of Claiborne county, to summon and empannel a jury of twelve freeholders of said county, who shall be sworn to view and value such land, and assess damages, if any be sustained, without favor or partiality, and report their valuation and assessment to the said circuit court; provided, that, in making said valuation and assessment, the said jury shall take into the estimate, the benefit resulting to the owners from constructing said railroad through, along, or near the property of such owner, but only towards the extinguishment of the claim for damages; and the circuit court shall thereupon, cause a conveyance of the land to be made to said company, and the said owner shall be entitled to the amount of valuation, and assessment reported by the jury, and the said court shall grant judgment and execution thereon against said company."

A jury were summoned on the prayer of the petitioner, who assessed the value of the land at 922 dollars and 62½ cents, without giving any damages. The court gave judgment against the company for that sum, and decreed a conveyance of the land, and appointed a commissioner to make the same.

The appellant moved the court to instruct the jury, 1. To assess the value of the land. 2. That they were to take into consideration all the circumstances connected with this section of the railroad by which the plaintiff would be injured or benefitted, and allow damages or not accordingly. 3 That the jury were to consider the injury which the appellant would sustain in his ferry, a bridge across the Bayou Piere, and, also, the enhanced value of his land if any, and allow damages or not, as they might believe he was benefitted or injured.

The court charged the jury first, that, they were to assess the value of the land which the company wished to obtain. That, they were to take into consideration the damages which the owner of the land would sustain from the erection of the road, and also, the advantages which might accrue to him. That in their estimate they were not to know that the appellant had a bridge or ferry across said stream, the legislature in granting the privilege of the bridge and ferry having expressly reserved the right to establish a railroad or turnpike within the limits reserved to the

[Thompson *v.* The Grand Gulf Railroad and Banking Company.]

appellant in his charter, and had provided the mode of assessing the value of his bridge or ferry privilege, and of remunerating him therefor.

Exceptions were taken, and an appeal to this court.

There was also, a motion to dismiss the cause in this court for want of jurisdiction, and proper parties: Upon which Mr. Justice TROTTER gave the following opinion.

The motion to dismiss this cause for the want of jurisdiction in this court must be overruled. The present proceeding was authorised by the act of 1833, and the supplemental act of 1836, to incorporate the Grand Gulf Railroad and Banking Company. The plaintiff in error was properly and necessarily a party to the proceeding, because his interests were involved in the suit. It was therefore a controversy between the defendants in error and the plaintiff, and an appeal lies in all such cases after final judgment.

Montgomery and Boyd, for the appellants.

The charter granted Thompson to build a bridge, reserves the right to incorporate a turnpike or railroad, and prescribes the mode of ascertaining and making compensation. See Acts, 1833, p. 215, sect. 6.

The charter granted the bank, authorises the company to buy land of the owners; and prescribes the mode of assessing compensation in cases of disagreement, or incompetency of owner to contract, by petition to circuit court and appointment of a jury to view and value, and gives the court power to cause a conveyance to be made, and give judgment against the company for amount assessed. Acts, 1834, p. 142, sect. 4.

Amendment to the charter provides more fully for the manner of proceeding to assess compensation, but provides, that the jury may take into consideration the benefits the party will receive as a set-off to the claim for damages. Acts, 1836, p. 170, sect. 1.

If private property is required for public use, due and adequate compensation must first be made; and that must be ascertained by a jury, and paid in money. Constitution of Mississippi, Bill of Rights, sect. 13; Angel on Water Courses, 35 note 1, and the authorities there cited; 2 Johns. Cha. Rep. 161.

1. The charter of the Grand Gulf Bank is unconstitutional,

[Thompson *v.* The Grand Gulf Railroad and Banking Company.]
because there is no provision that the road shall ever become public property; it is therefore private.

2. Because it makes no provision to pay Thompson for the interference with his chartered right on the Bayou Piere, to one mile above and below his bridge.   2. Johns. Cha. Rep. 161.

The right of trial by jury applies to this case, as in ordinary trials, and the right of challenge attaches.   Rev. Code, 137, sect. 142.

The power to summon talesmen is given by the same statute, and in nearly the same, at any rate not stronger language; and if the court had not the right to sustain a peremptory challenge, it had not the right to order talesmen to be summoned.   Rev. Code, 137, sect. 133.

The court should have instructed the jury to inquire into the nature and value of the bridge and ferry, because they were appurtenant to the land, and added to the value, and whatever would have a tendency to divert the travel, reduced the value of the appurtenances.

Anderson, for the appellee.

The legislature have the power to appropriate private property to public uses, upon making compensation to the owner.   20 Johns. Rep. 735–745; 4 Wend. Rep. 647, and 667; 8 *Ibid.* 101–2.

This power is probably not questioned; but it is insisted by the appellant, that the bill of rights in the constitution of Mississippi, which declares, that private property shall not be taken or appropriated to public use, without just compensation first made— requires, that the compensation must be first paid, before the property can be taken.   So, considering the expression " compensation first made," as meaning nothing more nor less than compensation first paid.

This is an erroneous construction of the words.   The constitution of New York uses the same words, except the word *first.* All the above cases show, that a means of procuring compensation, provided by the act appropriating the private property to public use, satisfies the word requiring compensation to be made. And the property has been entered upon and appropriated, while the owner was left to seek afterwards, the compensation in the

[Thompson *v.* The Grand Gulf Railroad and Banking Company.]

manner provided.   Now if the word *made* in this sentence, is to be considered synonymous with the word *paid*, then the constitution of New York, without using the word first, as much prohibits the appropriation of the property until payment is *made*, as does the constitution of Mississippi, which does use the word *first*.   For example, suppose the words of the constitution of New York were, that private property should not be taken, or appropriated to public use, without a just compensation *paid*. Would any one be bold enough to say, that an entry on the property, and an appropriation thereof to public use, while the owner was left to seek the compensation afterwards, by a proceeding which may have been provided by the statute appropriating the property, would not be a violation of that constitution?   And just as much a violation thereof, as it would be, if such constitution had used the words *first* paid?   The uniform decisions of New York are, that a provision by law made, whereby the owner may seek and obtain compensation after his property is taken, satisfies the prohibition of the constitution, that it is not to be taken, without compensation made, showing indisputably, the judicial construction of the words "compensation made," is not compensation paid, but compensation provided.   If this be correct, it proves, that the constitution of Mississippi means, that the property is not to be taken, &c., without a just compensation *first* provided.

This article of the constitution is addressed to the legislative department of the government; it is not restrictive of any executive or judicial functions, or private individual action.   The constitution contemplates the exercise of legislative powers, by enactments, statutes, and resolutions, so far as respects this subject; and its prohibitions are not predicated on the apprehensions that the legislative body of men might, with manual force, deprive the citizen of his property, as a man might trespass upon his neighbor.   Nor does it contemplate that the legislature are to perform the act manually or ministerially of paying the compensation to the owner of property applied by them to public use.   The restriction or prohibition is addressed to them as a body in their legislative capacity, as one department of the government acting and performing these powers, by prescribing what shall be done.

[Thompson *v*. The Grand Gulf Railroad and Banking Company.]

You shall not, by law or resolution, direct or command that the citizen's property be taken for public use, unless you also provide, direct or command, or unless you first direct, provide, or command, that a just compensation be made him therefor, seems to me to be the plain meaning and proper construction of the constitution. But, suppose I am not sustained by the honorable court in the construction just given to the constitution, and that the true construction of the constitution is, that the just compensation is to be actually first paid to the owner of property, before it is taken for public use. I ask, how does the act of 1836, amending the charter of the Grand Gulf Railroad and Banking Company, conflict with this construction of the constitution? That statute provides, that the compensation for private property, which is to be appropriated to the use of the road, is to be assessed in a mode pointed out, that judgment is to be given for it, and it is to be collected by execution and paid to the owner. It also provides, that the company may enter upon the property; and it provides, that the court shall cause the property to be conveyed to the corporation; but it does not say which of all those things shall be first done. If the constitution declares which shall be first done, be it so; let the constitution be obeyed; let the things which the statute declares shall be done, be done in the order in which the constitution directs, and then the constitution and statute are in perfect harmony.

I grant an inference might be drawn from the order of the provisions of this statute, that the legislature intended the appropriation of the property before a compensation is paid, but it is but an inference. The court, in giving a construction to an act of the legislature, will always act on the belief that that co-ordinate department of the government had as much regard for the constitution as itself; and any inference which would involve the legislature in a violation of the constitution, will be rejected. And the court will strive to construe the act in accordance and agreement with the constitution, if it will bear such construction. 2 Tenn. Rep. 346. Act of 1833, chap. 8, p. 214. The privilege granted to Thompson is a violation of the 1st sect. of the 1st article of the constitution.

The act of 1833 provides a particular mode, by which the

21*

[Thompson *v.* The Grand Gulf Railroad and Banking Company.]

appellant was to be compensated for his bridge, and no other can be resorted to. The charge of the court was correct on that point, for which I cite an authority directly in point. 4 Wend. Rep. 667. This was the only difference between the charge given, and that which was requested by the appellant.

The authorities first cited, show that this is a public use; the construction of a road is a public work, although allowed to be done by an individual or a company for their private emolument.

The legislature have the power to appoint commissioners to assess the value of private property and damages, &c., without the intervention of a jury or a suit in court in the ordinary mode. And such is this proceeding: the judge and the twelve freeholders are but commissioners to assess the value of the land and damages; and, although this was a controversy, as this court have decided upon a motion heretofore made in this case, and, therefore, was embraced by the statute, giving appeals from the circuit court; yet it is not an action or suit in which the usual mode of summoning and empanneling a jury are observed; and, as the statute gave no challenges of the freeholders, the appellants had none peremptory, and the judge was correct in so deciding. 4 Wend. Rep. 667; 8 *Ibid.* 101–2.

Mr. Chief Justice SHARKEY delivered the opinion of the court at a subsequent day of the term.

The present controversy arose out of an application by the appellees to the circuit court of Clairborne county, to have the damages assessed to the appellee, which he might sustain by running the railroad through his land. The proceeding was instituted under the 4th sect. of the charter, which authorises the company to purchase of individuals any lands, or the use and occupation of any lands which they may deem necessary; and in case they cannot agree upon the terms of purchase, with the owners of land, they may petition the circuit court of Clairborne county to empannel a jury of twelve freeholders, who shall be sworn to view and value the land without favor or partiality, and report their valuation to the circuit court, and the court shall thereupon cause a conveyance to be made to the company, and adjudge the assessed value thereof to the owner of the land. The amend-

[Thompson *v.* The Grand Gulf Railroad and Banking Company.]
ment to the charter, passed in 1837, provides in addition, that in assessing the damages, the jury shall take into consideration the benefits resulting to the owner of land from constructing such road, but only towards the extinguishment of the damages, and that the court shall grant a conveyance, and render judgment and award execution against the company for the amount of the damages assessed.

Several objections are made to the regularity of the proceedings of the circuit court, but it will be unnecessary to notice them in detail, as the case must be disposed of on the grave question of the constitutionality of the charter, taken and relied upon in the argument. That part of the charter which is said to conflict with the constitution, is the latter clause of the first section of the amendment. The ground taken arises under the provision in the bill of rights, which declares that " no person's property shall be taken or applied to public use without the consent of the legislature, and without just compensation first made therefor."

It is insisted that the compensation should be *first* made, and that a judgment is not compensation. On the other hand it is said that it is sufficient for the legislature to provide the means by which compensation is to be acquired. To determine between the constitution and the legislature, is often embarrassing, and always demands a cautious and deliberate investigation. In the inquiry is involved the highest function of the judicial department. The acts of the legislature should be sustained, if possible; the constitution *must* be preserved inviolate. We have approached this question under a due sense of its importance, and have given to it such investigation as the limit of our time would admit, and we are entirely satisfied with the correctness of the result to which that investigation has led.

It is a sound rule in construing constitutions, that no word is to be rejected or disregarded which may have a material bearing on the rights of the citizen, and such construction should be given as will best protect private rights, because constitutions are limitations, which confine each department of the government to the exercise of such powers only as have been delegated. The word " first," used in the bill of rights, cannot be regarded as useless; nor are we at liberty to suppose that it was inserted

[Thompson *v.* The Grand Gulf Railroad and Banking Company.]

without design or by accident. The sentence is perfectly intelli-
gible as it stands, and in accordance with first principles. By
regarding the word " first" as material, there can be no difficulty
in carrying the provision into execution by proper legislation; but
by rejecting it, and assuming the position that it is sufficient for
the legislature to provide the means or the mode of obtaining
compensation, the provision might be wholly defeated, and
owners compelled to part with their property without compensa-
tion. If the law be sustainable, it must operate generally, there
is no exception to it. Suppose that a company or corporation, to
whom private property is adjudged, should be wholly irresponsi-
ble, and it is not straining too much to suppose such a case, what
compensation has the owner for his property? But even if it
should be responsible, is it fair or just to convey away private
property, and only provide the owner with a legal remedy for
the value, which may easily be exhausted in the pursuit of the
remedy. These, amongst others, are evils which might follow
under an administration of the provisions of the charter, if they
are sufficient, and being evils so apparent, it is fair to presume
that the convention intended to guard against them, and the pre-
sumption derives strength from the fact that the words they
employed, if literally construed, are of all others, best calculated
to effect this object. The power in a state to appropriate private
property by virtue of its right of eminent domain, should be
exercised only in the strictest justice towards the owner of the
property. Blackstone, in his Commentaries, says, " the public is
now considered as an individual, treating with an individual for
an exchange." 1 Black. Comm. 139. If this remark be true, it
is obvious that neither party would have a right to enforce terms
on the other, which are not acceptable. We cannot presume that
the convention intended that this right should be exercised unless
on terms the most favorable to individuals. Life, liberty and pro-
perty are three great objects of governmental protection, and we
must infer that due precaution has been used for the protection of
each of them. To divest the right to property without ample
compensation, would be unjust. The judgment in this case is
not compensation. A judgment is but a security for compensa-
tion or satisfaction, which may or may not prove productive. In

[Thompson *v.* The Grand Gulf Railroad and Banking Company.]

principle there is no difference between a judgment and a bond, except that one is a security of a higher nature than the other. Suppose the legislature had said that the railroad company should, give bond for the payment of the damages assessed, could it be said to be a compensation? And yet it might be quite as available as a judgment. Angell, in a note on this subject, says, " there can be no other just equivalent but money." Angell on Water Courses, 40. We must, therefore, understand that when the convention said that private property should not be taken without compensation first made, that they did not intend that a mere security should be subsituted for compensation.

The authorities cited for the defendants in error, cannot be considered as entirely applicable. The constitution of New York is different from ours, in not requiring that compensation shall be first made; it merely declares that private property shall not be appropriated to public purposes without just compensation. The authorities, however, do not fairly cover the point in controversy. The most recent opinion directly on the point, and the one which we rely on as an authority, is that of Chancellor Kent, in a copious note to the third edition of his Commentaries. After citing many authorities in regard to the right of eminent domain, he proceeds to say: " The better opinion is, that the compensation, or offer of it, must precede or be concurrent with the seizure and entry upon private property under the authority of the state. The government is bound, in such cases, to provide some tribunal for the assessment of the compensation or indemnity, before which each party may meet and discuss their claims on equal terms; and if the government proceeds without taking these steps, their officers and agents may, and ought to be restrained by injunction." 2 Kent, 339, *note.* He says further: " The settled and fundamental doctrine is, that government has no right to take private property for public purposes without giving a *just compensation;* and it seems to be necessarily implied, that the indemnity should, in cases which will admit of it, be previously and equitably ascertained, and be ready for reception concurrently, in point of time with, the actual exercise of the right of eminent domain." It is worthy of remark too, that Chancellor Kent has not given the foregoing opinion in view of any consti-

[Thompson *v*. The Grand Gulf Railroad and Banking Company.]

stution requiring, in direct terms, a previous indemnity, but in reference to constitutions containing nothing more than the general provision, that private property shall not be taken for public uses without full compensation being made; and in reference also, to the universal principles of justice, independent of all constitutions; for in support of it, he cites Puffendorf, Grotius and others. He also cites the Civil Code, and Code Napoleon, as both requiring previous indemnity; and says the American constitutions being substantially the same in these provisions, though not in the same words, would seem to require the same construction; from which we may infer that under these codes, previous indemnity is required to be made. The provision in the Civil Code, is, that " no one can be divested of his property, unless for some purpose of public utility, and on consideration of a previous and equitable indemnity, and in a manner previously prescribed by law." Civil Code of Louisiana, art. 489. The idea is not new, that compensation should precede or be concurrent with the appropriation of private property, nor is the provision peculiar to our constitution. As the right to apply private property to public uses, is an incident of inherent sovereignty which might be exercised to the prejudice of individuals, it is fair to infer that the convention were not content that the restriction should rest upon the uncertain application of the general principles of justice, and, therefore, incorporated it into the constitution, thus placing it out of the power of the legislature to exercise the right on any other than equitable and just terms. Under this view, we think it was incompetent for the legislature to authorise the railroad company to take private property, giving the owner no other compensation than a judgment and execution.

But it is contended that an imperfect mode of compensation does not necessarily make the charter void. That is true, if it could be carried into effect. This was held to be the law in the authorities cited. An act appropriating private property without providing adequate means for making compensation, was held sufficient to protect the agents from an action of trespass. The act, it seems, is to be considered, *prima facie* good, until the party be judicially prevented from acting under it. But when there is no mode prescribed for making the necessary compensation, a

[Thompson *v.* The Grand Gulf Railroad and Banking Company.]

court of chancery would prevent the party from proceeding under it by injunction, as was done in the case of Gardner *v.* The Village of Newburg, cited by the counsel. That is precisely the case here. The legislature have prescribed no mode of making the required compensation, or what is the same thing, have prescribed a mode which cannot be constitutionally carried into effect, and the plaintiff in error refuses to give up his property, and he cannot be compelled to do so. The consequence is, that that portion of the charter which authorises the taking of private property, must be inoperative, and we do not wish to be understood as interfering with any other part of it. If there was any mode of construing the charter by which a constitutional remedy could be given, we should think it our duty to give it that construction. But the legislature has provided that the owner of land in whose favor damages are assessed, shall have judgment and execution for the amount. This is the only remedy that is given, and we say it is not sufficient; but we cannot make a remedy that is sufficient, by authorising the court to give a different judgment from that which is directed by the legislature. That is the business of the legislature itself, if it should be deemed necessary. If the money had been paid on the rendition of the judgment, we should not be prepared to say that it would not have been sufficient; but this was not done, and the party has nothing but the judgment. It was competent for the legislature to prescribe the mode of assessing the damages as they did.

In support of this opinion, it may not be out of place to remark that one of the members of this court was also a member of the convention, and recollects that the above mentioned provision in the bill of rights was discussed, and it was framed as it is on due deliberation, and with a view to secure to individuals a previous indemnity for property taken.

Under these views, we feel constrained to reverse the judgment, and dismiss the application.